NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSEPH C. ANORUO,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-1114

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-22-0181-W-1.

---

Decided: August 16, 2023

---

JOSEPH ANORUO, Las Vegas, NV, pro se.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before CHEN, CUNNINGHAM, and STARK, *Circuit Judges*.

PER CURIAM.

Dr. Joseph C. Anoruo seeks review of the Merit Systems Protection Board's ("MSPB" or "Board") final decision denying his request for corrective action. We affirm the Board's decision.

I

Beginning in 2003, Dr. Anoruo has worked at the Veterans Affairs Southern Nevada Healthcare System ("VASNHS") as a clinical pharmacist. After the VA issued a mandate to increase efficiency in pharmacy operations, some outlying clinic pharmacies were closed, resulting in Dr. Anoruo being reassigned as an outpatient pharmacist in Las Vegas. In 2019, Dr. Anoruo filed a complaint with the Office of Special Counsel ("OSC") challenging the VA's decision to close the outlying clinic pharmacies and alleging that certain policies relating to the mail order prescription system were delaying patient access to prescription medications, destroying thousands of dollars of prescription drugs, and causing the VA to expend significant resources to handle returned prescriptions. The VA investigated and substantiated Dr. Anoruo's allegations relating to the mail order prescription system and ultimately adopted changes relating to the mailing protocol for certain narcotics.

One of Dr. Anoruo's responsibilities as an outpatient pharmacist is to process pending prescriptions. Pharmacists are sometimes placed on "pending" rotations, during which the processing of pending prescriptions is their primary duty. Often, pharmacists on a "pending" rotation are called to cover other vacant rotations. Regardless of the type of rotation, pharmacists are expected to process pending prescriptions whenever they have time to do so.

Dr. Anoruo repeatedly failed to meet the performance standard for processing pending prescriptions (Dispensing/Drug Distribution Functions), an assessment which is

measured by "dividing the total number of pending prescriptions processed by the pharmacist during the fiscal year by the total number of days the pharmacist worked during the fiscal year." S.A. 4-5.[1] In 2018, successful performance required processing 125 pending prescriptions per day. That year, Dr. Anoruo processed an average of 76 prescriptions per day. In 2019 and 2020, successful performance required processing 120 prescriptions each day, but Dr. Anoruo only processed 100 and 104, respectively. Dr. Anoruo also failed to be rated as successful on another performance standard: Clinical Functions. In 2020, success required 4.8 notes per day, but Dr. Anoruo only completed 4.74 notes per day.

Starting in 2020, as a consequence of the Covid-19 pandemic, VASNHS permitted pharmacists to work remotely on some rotations. However, employees with unsuccessful performance evaluations, like Dr. Anoruo, were not eligible for telework. When the agency issued Dr. Anoruo's performance plan for 2021, Dr. Anoruo raised concerns regarding the alleged advantage other pharmacists had in filling pending prescriptions by working from home. The agency did not change his performance standards.

During Dr. Anoruo's mid-year performance evaluation in April 2021, his supervisor, Dr. Dale Hawkins, notified him that he was unsuccessful in meeting the performance standard for processing pending prescriptions. Dr. Anoruo refused to acknowledge receipt of this appraisal because Dr. Hawkins had not addressed Dr. Anoruo's previous concerns.

---

[1]    We refer to Dr. Anoruo's appendices by the docket number assigned by this court's CM-ECF system and page number citations are to those generated by the court's system. We refer to the government's supplemental appendix as "S.A." and cite to its internal page numbers.

On June 8, 2021, Dr. Hawkins met with Dr. Anoruo and his union representative to discuss Dr. Anoruo's unsuccessful performance on the Dispensing/Drug Distribution Functions metric. Dr. Hawkins recommended placing Dr. Anoruo on a Performance Improvement Plan ("PIP"). Dr. Anoruo disagreed, explaining that his low numbers resulted from unfair scheduling that left him with no "pending" rotations. On June 11, 2021, Dr. Hawkins placed Dr. Anoruo on a PIP, which gave Dr. Anoruo 90 days to demonstrate acceptable performance in processing pending prescriptions. Dr. Hawkins offered to meet with Dr. Anoruo biweekly to discuss Dr. Anoruo's work, but Dr. Anoruo disputed the PIP and refused to meet. After each attempted meeting, Dr. Hawkins emailed Dr. Anoruo his performance metrics, conduct Dr. Anoruo alleged was harassment. Dr. Anoruo ultimately failed his PIP. In November 2021, Dr. Anoruo was again rated unsuccessful on prescription processing performance, based on both qualitative and quantitative standards (i.e., Prescription Processing Qualitative Standards and Prescription Processing Quantitative Standards).

Earlier that same year, on March 7, 2021, Dr. Anoruo had filed a complaint with OSC alleging whistleblower reprisal. In particular, Dr. Anoruo contended that he had faced "numerous adverse personnel actions in retaliation for disclosing to [his] management about inequitable scheduling, false accusations, and evidence tampering." S.A. 606. On January 18, 2022, the OSC notified Dr. Anoruo that it had closed its investigation and he could file an individual right of action ("IRA") appeal with the Board. Dr. Anoruo appealed to the Board.

After finding jurisdiction, a Board administrative judge ("AJ") held a five-day hearing to consider Dr. Anoruo's OSC complaints, including his 2019 complaint concerning VASNHS's mail order prescription system and his 2021 retaliation complaint. The AJ concluded that Dr. Anoruo established a *prima facie* case of whistleblower

reprisal because he "engaged in the protected activity of exercising a complaint right" in several ongoing OSC complaints, including his 2019 complaint, but that the agency had met its burden in showing that it would have taken the personnel actions regarding Dr. Anoruo even if he had not engaged in whistleblowing activity, due to his repeated failure to satisfy the performance standards. S.A. 24, 87.

The AJ denied Dr. Anoruo's request for corrective action. Her decision became the Board's final decision on September 23, 2022. Dr. Anoruo timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).[2]

## II

In reviewing the record and the Board's decision, we must "hold unlawful and set aside any agency action, findings, or conclusions found to be – (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by

---

[2] Dr. Anoruo argues that the Board disregarded his allegations of discrimination based on national origin, race, and age. In IRA appeals, the Board's review is limited to "the merits of allegations of violations of the Whistleblower Protection Act." *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1327 (Fed. Cir. 2020) ("Discrimination claims may not be raised in that context."); *see also Marren v. Dep't of Just.*, 51 M.S.P.R. 632, 638–39 (1991) ("[T]he Board's jurisdiction to review IRA complaints based on personnel actions over which it otherwise does not have appellate jurisdiction is limited to adjudicating the whistleblower allegations."), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992) (table); 5 U.S.C. § 1221(a). If Dr. Anuoro wants review of his discrimination claims, he may file a formal Equal Employment Opportunity Commission complaint.

substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). We do not consider new evidence that was not presented to the Board. *See Oshiver ex rel. Oshiver v. Off. of Pers. Mgmt.*, 896 F.2d 540, 542 (Fed. Cir. 1990).

"An employee who believes he has been subjected to illegal retaliation must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1365 (Fed. Cir. 2019). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 1221(e). In evaluating whether substantial evidence supports the Board's findings, we consider "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

On appeal, Dr. Anoruo contests several of the AJ's findings of fact, including that the AJ made erroneous credibility determinations, failed to consider scheduling inequalities, relied on unreliable metrics, and failed to find a hostile workplace. Substantial evidence supports each of the AJ's determinations.

Appropriately, the AJ's findings rest in large part on her evaluation that Dr. Anoruo was not a credible witness. "The credibility determinations of an administrative judge are virtually unreviewable on appeal." *Bieber v. Dep't of*

*Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). After observing extensive testimony from Dr. Anoruo over multiple days, and also hearing the testimony of numerous other witnesses, the AJ provided express credibility findings and thoroughly explained her reasoning. *See* S.A. 10-22. For instance, the AJ concluded that Dr. Anoruo made inconsistent statements and had a "tendency to misread or misunderstand documents," which undermined his credibility. S.A. 16.

The Board also had substantial evidence to conclude that there were no scheduling disparities between Dr. Anoruo and other outpatient pharmacists. Instead, all outpatient pharmacists were pulled from "pending" rotations "in the same manner and with the same frequency." S.A. 32; *see also* S.A. 677. The AJ analyzed Dr. Hawkins' schedule for the 2021 fiscal year, which showed that Dr. Anoruo worked 28 "pending" shifts, which was equivalent to 53% of his possible pending shifts. S.A. 33; *see also* S.A. 677. The AJ then carefully compared Dr Anoruo's shifts to those of other pharmacists and found that those who worked the same or fewer number, and approximately the same percentage, of pending shifts nonetheless filled more prescriptions than him. S.A. 33; *see also* S.A. 677.

Substantial evidence likewise supports the Board's findings that Dr. Anoruo did not suffer from a hostile work environment. He primarily argues that his Centralized Mail Order Pharmacy ("CMOP") errors should constitute a separate personnel action for purposes of his hostile work environment claim. We discern no error in the AJ's view that accepting Dr. Anoruo's argument "would result in inappropriately considering the same agency actions as two separate personnel actions" because "these errors were at least partially responsible for the appellant's challenged performance appraisal." S.A. 36-37. In any event, any error in the AJ's consideration of Dr. Anoruo's CMOP errors as a part of his challenge to his performance appraisal and not also as part of his hostile work environment claim was

harmless.  While Dr. Anuoro's rating for CMOP errors for 2021 was changed to successful by the agency, his overall rating remained unsatisfactory because he failed to meet the metric for pending prescriptions processed per day.  *See* S.A. 615-16.[3]

Finally, substantial evidence supports the Board's finding that the agency presented clear and convincing evidence that similarly situated individuals who were not whistleblowers were also placed on a PIP, when they failed to meet the performance standard for processing pending prescriptions.  *See, e.g.*, S.A. 86-87 (noting that another pharmacist was placed on a PIP for failing to meet pending prescription performance standard); ECF No. 56 at 12-13.

In short, the AJ reasonably held a multi-day hearing, after which she found Dr. Anoruo lacked credibility, and then carefully analyzed the testimony of all witnesses and the extensive record before her.[4]    Her conclusions,

---

[3]    Dr. Anoruo also argues that the AJ misapplied the Board precedent of *Skarada v. Dep't of Veterans Affs.*, 2022 MSPB 17, 2022 WL 2253877, at *5 (M.S.P.B. 2022), in connection with his claim of hostile work environment. *Skarada* states that "only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities" will constitute a personnel action.  *Id.*  The AJ did not deviate from *Skarada* in considering whether each agency action, individually and collectively, amounted to a "significant change in duties, responsibilities, or working conditions."  S.A. 26.

[4]    Dr. Anoruo has repeatedly moved to file documents not previously included in the appendices.  To dispel any potential confusion, we take this opportunity to make clear that we did fully deny his motion for reconsideration that was pending at ECF No. 57.  That is, our order of August 1, 2023 (ECF No. 58), denied Dr. Anoruo's request to file

including that the agency presented clear and convincing evidence that it would have taken the same personnel actions against Dr. Anoruo even absent his whistleblower activity, and that it had treated similarly situated non-whistleblower pharmacists in a similar manner, were supported by substantial evidence. The Board did not err in rejecting Dr. Anoruo's claims.

## III

We have considered Dr. Anoruo's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's denial of corrective action.

**AFFIRMED**

---

his communications with OSC because he was unable to show that these documents were in the record before the Board. Accordingly, we now also deny his motion for reconsideration pending at ECF No. 62, for the same reasons.